DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Athens County Common Pleas Court granting a motion to suppress evidence filed by Defendant-Appellee Michael Winters. The State of Ohio appeals pursuant to Crim.R. 12(J) and asserts that the trial court erred by granting defendant's motion for two separate reasons: 1) the warrantless search of defendant's person was properly consented to by defendant; and 2) assuming that defendant did not consent, the search was valid pursuant to the "plain feel" doctrine.
 {¶ 2} After a careful review of the record below, this Court disagrees with the state's arguments. Accordingly, we affirm the judgment of the trial court.
 Facts and Proceedings Below {¶ 3} On May 21, 2001, Defendant-Appellee Michael Winters was indicted for possession of psilocybin, a fifth-degree felony in violation of R.C.2925.11. On October 7, 2002, defendant moved to suppress the state's evidence asserting that it was obtained as the result of an illegal search.
 {¶ 4} On September 24, 2002, the trial court held a suppression hearing on defendant's motion. At the hearing, the state offered the testimony of just one witness, Trooper Travis Woodyard of the Ohio State Highway Patrol. Woodyard testified to the events that led to the charges against defendant.
 {¶ 5} On Thursday, October 26, 2000, at 9:06 a.m., defendant was a passenger in a 1976 Volkswagen Microbus van driven by his girlfriend, Bethany Canada. Trooper Woodyard stopped the automobile for failing to display a front license plate. Woodyard testified that he approached the passenger side of the van, advised Bethany why he made the stop, and asked for each occupant's identification. Woodyard also noted that, during this exchange, both Bethany and defendant displayed a nervous demeanor, and defendant would not make eye contact with him.
 {¶ 6} Following that exchange, Trooper Woodyard returned to his cruiser, called in Bethany's and defendant's information to dispatch, and proceeded to write a traffic citation for the license plate violation. Woodyard testified that, at this time, his unit was working with four or five others, as well as two canine units in Athens, specifically for the traffic coming into Athens for the Halloween weekend. Based on this, Woodyard called for a canine unit to assist his investigation. Woodyard testified that he was not sure if he suspected any other criminal activity, just that any suspicion he may have had was based on the occupants' nervous behavior and failure to make eye contact.
 {¶ 7} At 9:00 a.m., Sergeant Alwine, who was following a few miles behind Trooper Woodyard, arrived on the scene to make sure everything was in control. Woodyard testified that at that point he requested a criminal history check for both defendant and Bethany. The criminal history check revealed that defendant had prior arrests for theft and criminal damaging. Woodyard indicated that he thought that defendant's prior arrests may have been the reason for the nervous behavior but was not sure.
 {¶ 8} At 9:20 a.m., Trooper Ball arrived on the scene with a canine unit. Trooper Woodyard testified that Trooper Ball walked his drug-sniffing dog Ringo around the van and it reacted aggressively at the left side of the van behind the driver's door. Woodyard testified that Ringo made a "hit" on the driver's side of the van and at that point Woodyard ceased writing the license plate citation and initiated a drug investigation. Woodyard testified that he notified Bethany that Ringo indicated the presence of drugs and asked her if there were any narcotics in the vehicle. Bethany replied that there was not and that he could check. At that time, Sergeant Alwine requested that Bethany exit the van, while Woodyard requested the same from defendant.
 {¶ 9} Trooper Woodyard testified that he asked defendant if he was carrying any weapons, drugs, or any other contraband on his person. Defendant replied that he was not. Woodyard asked defendant if he could check and defendant said yes. At that point, defendant began emptying his pockets to show Woodyard their contents. Woodyard testified that, although defendant was not under arrest at the time, he performed a pat down of defendant. When Woodyard began his pat down procedure, defendant asked Woodyard why he was being patted down. Woodyard testified that he told defendant that he had asked for defendant's permission to do so, and that if he desired Woodyard not to continue, he would stop. Woodyard further testified that defendant's response was "no, that's okay, I was just asking."
 {¶ 10} Trooper Woodyard continued to pat down defendant when he felt a soft item in defendant's front left pocket. Woodyard testified that he asked defendant what the item was and that defendant told him it was change. Disputing defendant's explanation, Woodyard told defendant that he knew the item was not change because it was soft and did not make any noise, and he again asked defendant what it was. Defendant dropped his head and did not answer. At that point, Woodyard reached into defendant's pocket and removed the soft item, which was a single psilocybin mushroom. Shortly after that, Sergeant Alwine read Bethany and defendant their rights and the other officers conducted a search of the van. The search of the van uncovered only a wooden smoking pipe in Bethany's purse. Woodyard testified that Bethany and defendant were released after Woodyard issued citations for their offenses.
 {¶ 11} In its judgment entry filed November 7, 2002, the trial court granted defendant's motion to suppress. The trial court found that Trooper Woodyard possessed the necessary reasonable, articulable suspicion to stop the van for a license plate violation. The court further held that the canine sniff of the vehicle was not a search since Woodyard had not fulfilled the purpose of the traffic stop at the time Ringo alerted to the presence of drugs. The court found that the fourteen-minute time frame between the initial stop of the van and the subsequent canine sniff was not unreasonable. Further, no facts indicated that Woodyard procrastinated in the performance of his duties in order to give the canine unit time to arrive.
 {¶ 12} The trial court also held that once Ringo alerted to the presence of drugs, probable cause existed to search the vehicle. Because they were occupying the vehicle at the time, the court found that Trooper Woodyard had at least reasonable suspicion to further detain and investigate the driver and defendant. However, the court found that in the absence of an exception to the warrant requirement, a warrantless search of his person was not permitted. The court found that none of the exceptions applied in this case. The court noted that the "plain feel" doctrine was inapplicable since Woodyard admitted that the nature of the object was not "immediately apparent."
 {¶ 13} Unconvinced by the testimony of Trooper Woodyard, the court found that the totality of the circumstances suggested that the defendant did not consent to a search of his person by an independent act of free will. The court found that defendant was never informed there was any focus on him for illegal activity, that he would have a basis to consent or not consent to the request to search, and was presented with an overwhelming show of force. During the pat down, Woodyard discovered something other than a weapon. Defendant never gave Woodyard consent to go into his pocket to explore for something other than a weapon. Accordingly, the trial court found that the totality of the circumstances failed to indicate that defendant consented by an independent act of free will. Thus, the court granted defendant's motion to suppress.
 The Appeal {¶ 14} The state timely filed an appeal and assigned the following error for our review.
 {¶ 15} "The trial court erred by granting defendant's motion to suppress evidence."
 {¶ 16} The state's arguments are twofold: 1) defendant voluntarily consented to a warrantless search of his person; and 2) assuming defendant's consent was not voluntary, evidence found during a "pat down" search could be seized under the "plain feel" doctrine.
 {¶ 17} We find that the warrantless search of defendant's pocket was unjustified because the "plain feel" doctrine is not applicable. Accordingly, we affirm the judgment of the trial court.
 {¶ 18} The decision to grant or deny a motion to suppress involves a question of law. This Court's review of the trial court's judgment granting or denying such a motion involves mixed questions of law and fact. State v. Bennett (June 21, 2000), Ross App. No. 99CA2509. Thus, we defer to the trial court's findings of fact, if supported by competent, credible evidence, as it is in the best position to evaluate the veracity and reliability of witnesses. State v. Clay (1973), 34 Ohio St.2d 250,298 N.E.2d 137; State v. Metcalf (1996), 111 Ohio App.3d 142,675 N.E.2d 1268. We are ordained with the task of independently determining whether the trial court applied the appropriate legal standard. State v. Anderson (1995), 100 Ohio App.3d 688, 654 N.E.2d 1034.
 {¶ 19} It is uncontested that Trooper Woodyard possessed the requisite probable cause to justify stopping the van for a license plate violation. While driving on the highway, Woodyard noticed that the van defendant was riding in failed to display a license plate in the front of the vehicle, as required by Ohio law. Therefore, Woodyard had probable cause to believe that the driver of the van committed a traffic offense.
 {¶ 20} After briefly speaking with the defendant and Bethany about why he stopped their van, Trooper Woodyard returned to his cruiser to enter their information and process the violation. During this time, Woodyard called for a canine unit, which arrived some fourteen minutes after Woodyard first stopped the van. We are presented with two issues that arise with respect to the dog sniff of Bethany's van. The first is whether Woodyard was required to have reasonable suspicion of drug-related activity before requesting Trooper Ball bring the drug dog to the scene. The second is whether Ringo's positive "hit" on the driver's side of the vehicle amounted to probable cause for Woodyard to search the van.
 {¶ 21} In its opinion, the trial court correctly found that the dog sniff of the van was not a search within the meaning of theFourth Amendment. Therefore, Trooper Woodyard did not need any suspicion of drug-related activity before requesting the canine unit to the scene. InUnited States v. Place (1983), 462 U.S. 696, 103 S.Ct. 2637, the United States Supreme Court held that the exterior canine sniff of an item located in a public place did not constitute a search within the meaning of the Fourth Amendment. Considering the courts' treatment of Place in Ohio, a drug sniff of the exterior of a legally detained automobile is not a search within the meaning of the United States Constitution or the Ohio Constitution. State v. Carlson (1995), 102 Ohio App.3d 585,657 N.E.2d 591; State v. Palicki (1994), 97 Ohio App.3d 175, 181-182,646 N.E.2d 494; State v. Riley (1993), 88 Ohio App.3d 468, 476,624 N.E.2d 302. In other words, if a vehicle is lawfully detained, an officer does not need a reasonable suspicion of drug-related activity in order to request that a drug dog be brought to the scene or to conduct a dog sniff of the vehicle. Thus, Woodyard did not need a reasonable, articulable suspicion of criminal activity beyond that which justified the initial stop in order to radio Trooper Ball and have him conduct a canine sniff of Bethany's vehicle during its lawful detainment. See Statev. Shook (June 15, 1994), 9th Dist. No. 93CA005716. Accordingly, once Bethany and defendant were lawfully detained for the license plate violation, Woodyard did not need a reasonable suspicion of drug-related activity in order to request that Trooper Ball bring Ringo to the scene. Likewise, Trooper Ball could conduct the actual dog sniff of the van without reasonable suspicion of drug-related activity.
 {¶ 22} The issue now becomes whether Ringo's positive "hit" to the driver's side of the van gave Trooper Woodyard probable cause to search the van. Once Ringo alerted police to the odor of drugs, the officers then had probably cause to search Bethany's van. See State v. Coonrod
(Feb. 2, 1999), Ross App. No. 98CA2411; State v. Palicki,97 Ohio App.3d at 181; State v. French (1995), 104 Ohio App.3d 740, 749, 663 N.E.2d 367
(abrogated on different grounds, see City of Warren v. Smith, 11th
Dist. No. 2002-T-0063, 2003-Ohio-2003); see, also, United States v.Blaze (C.A. 10 1998), 143 F.3d 585, 592; United States v. Reed (C.A. 6 1998), 141 F.3d 644, 649; United States v. Williams (C.A. 5 1995),69 F.3d 27, 28. To facilitate a proper search of the van, the officers ordered both Bethany and defendant out of the vehicle. At this point, Woodyard asked defendant if he was carrying any weapons, drugs, or anything of that nature. After defendant answered no, Woodyard testified that he asked defendant if he could check and that defendant said yes. We note that Woodyard was within his authority to inquire as to the presence of weapons and other contraband However, Woodyard was not required to seek defendant's consent to conduct a pat down search for weapons.
 {¶ 23} For their own protection police offices may, during investigative stops, conduct pat down searches for weapons if the officers have reason to believe the suspect is armed and dangerous. SeeTerry v. Ohio (1968), 392 U.S. 1, 27, 88 S.Ct. 1868; Adams v. Williams
(1972), 407 U.S. 143, 146, 92 S.Ct. 1921; see, also, State v. White
(1996), 110 Ohio App.3d 347, 353, 674 N.E.2d 405; State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus. These sorts of Terry-type pat downs generally raise two separate and distinct issues: (1) whether the pat down was justified in the first place; and (2) if it was justified, whether the police conducted themselves within the lawful scope of the pat down. State v. Kennedy (Sept. 30, 1999), Ross App. No. 99CA2472.
 {¶ 24} As it pertains to the first issue, there is a line of authority law from the Federal Fourth Appellate Circuit recognizing that guns often accompany drugs. See United States v. Sakyi (C.A. 4 1998), 160 F.3d 164,169; United States v. Stanfield (C.A. 4 1997), 109 F.3d 976, 984; UnitedStates v. Perrin (C.A. 4 1995), 45 F.3d 869, 873. Therefore, a proper pat down is supported simply by the officer's objectively reasonable belief that drugs are in the vehicle. United States v. Sakyi, 160 F.3d at 169. The Supreme Court of Ohio has concurred that drug dealers are usually armed and that the right to frisk is "virtually automatic" when approaching suspected traffickers. See State v. Evans (1993),67 Ohio St.3d 405, 413, 618 N.E.2d 162. Thus, when Ringo positively "hit" to the presence of narcotics, Trooper Woodyard was justified in conducting a weapons pat down without defendant's consent. The fact that defendant did consent, however, did not transform the search from aTerry pat down to something more extensive.
 {¶ 25} As it pertains to the second issue, the scope of a pat down is limited to a narrow protective search of a detainee's person for concealed weapons. City of Mentor v. Fedor (Sept. 15, 2000), 11th
Dist. No. 99-L-166, citing State v. Evans, 67 Ohio St.3d at 408. "The purpose of this limited search is to allow an officer to pursue his or her investigation without fear of violence; it is not intended to provide the officer with an opportunity to ascertain evidence of crime." Id. InTerry, the United States Supreme Court outlined the standard for a pat down "frisk" in this way: "there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless if he has probably cause to arrest the individual for a crime." Terry v. Ohio, 392 U.S. at 27.
 {¶ 26} When police officers conduct a lawful Terry search for weapons, they may "seize non-threatening contraband when its incriminating nature is `immediately apparent' to the searching officer through his sense of touch." State v. Evans, 67 Ohio St.3d at 414, fn. 5, citing Minnesota v. Dickerson (1993), 508 U.S. 366, 113 S.Ct. 2130. This has become known as the "plain feel" doctrine. In Dickerson, the United States Supreme Court reasoned that if a police officer "feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plainview context." Minnesotav. Dickerson, 508 U.S. at 375-376.
 {¶ 27} Under the "plain feel" doctrine, the nature of the contraband must be "immediately apparent" to the officer at the time it is felt, rather than being determined after the search. Minnesota v. Dickerson,
5089 U.S. at 379. The "police officer is prohibited from handling the object previously determined not to be a weapon in order to establish its incriminating nature." Fedor, supra. Furthermore, whether the item felt by police is "immediately apparent" as contraband is a question of fact for the trial court. Kennedy, supra.
 {¶ 28} The trial court found, and we agree, that the "plain feel" doctrine would not apply in this case. Trooper Woodyard testified that during the pat down of defendant, he felt an item in his pocket that was soft. Woodyard further testified that "I didn't know what it was." Thus, because the criminal nature of the object was not immediately apparent to Woodyard, the "plain feel" doctrine does not apply. Further, Woodyard testified that he knew the object was not a weapon. Under these circumstances, the warrantless intrusion into defendant's pocket was not justified under the "plain feel" doctrine for a Terry "frisk".
 {¶ 29} We reiterate that defendant's supposed consent to the pat down is superfluous. Trooper Woodyard was well within his authority to conduct a Terry pat down for weapons. Defendant merely consented to a pat down that Woodyard already had authority to do. Thus, defendant's consent did not extend the scope of Woodyard's pat down into a more intrusive search for evidence of crime. Moreover, while defendant consented to a pat down, he never consented to Woodyard invasively digging his hands into defendant's pocket for something other than weapons.
 {¶ 30} According, the state's assignment of error is overruled.
 Conclusion {¶ 31} For the foregoing reasons we affirm the decision of the trial court granting defendant's motion to suppress the evidence obtained as a result of the unlawful search.
Judgment affirmed.