[Cite as *State v. Horsley*, 2013-Ohio-901.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 12CA3473 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| DANNY HORSLEY, | : | |
| aka Clyde Lark, | : | |
| | : | **RELEASED 02/08/13** |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Jeffrey M. Brandt, Robinson & Brandt, P.S.C., Covington, Kentucky, for appellant.

Mark E. Kuhn, Scioto County Prosecutor, and Pat Apel, Scioto County Assistant Prosecutor, Portsmouth, Ohio, for appellee.

_____

Harsha, J.

{¶1}   Danny Horsley was charged with various drug related offenses after law enforcement found narcotics in a rented automobile.  Prior to trial, Horsley filed a motion to suppress the evidence and argued that the police searched the vehicle without a warrant in violation of his Fourth Amendment rights.  Horsley now appeals the trial court's denial of his motion.

{¶2}   At the suppression hearing, the state conceded that Horsley had "standing" to challenge the search.  However, because Horsley does not allege any possessory interest or connection to the property that was searched, i.e. the vehicle, he has not established an expectation of privacy in the area searched. Consequently, his Fourth Amendment rights were not violated.  And even if we were to assume a violation occurred, the state has shown within a reasonable probability that the officers would

have discovered the drugs apart from the unlawful conduct that Horsley contends took place.  Therefore, the inevitable discovery doctrine applies and the trial court did not err by denying the motion to suppress.

## I. FACTS

{¶3}    In this case we focus upon the search of a rental car following a parking violation.  On the day in question, Officer Tiffany Hedrick of the Portsmouth Police Department encountered a white Chevrolet Malibu parked illegally on a public street and began the process of issuing a citation.  After running the vehicle's license plate and learning it was rented in Cleveland, she contacted Officer Timberlake about the vehicle.  Earlier that morning, Officer Timberlake received information from a confidential informant that two black males from out of town were driving a late model white Chevrolet and selling drugs in another area of Portsmouth.  When Officer Timberlake arrived at the scene, both he and Officer Hedrick got out of their vehicles and stood on the sidewalk near the rental car.  Marco Houston then exited a nearby home and asked the officers if there was a problem.  They informed him of the parking violation and without responding he turned and went back inside the home.  Shortly thereafter, he again approached the officers and told them he would move the car.  At this time, Officer Timberlake asked Houston for his identification.  Houston then turned around and went back inside the home.   He came outside a third time with his keys and his wallet.  He tried to enter the vehicle, but Officer Timberlake again told Houston they needed his identification to issue the citation.

{¶4}    After receiving his identification and patting him down for weapons, Officer Timberlake told Houston to sit on the curb while he called dispatch to check Houston's

information.  During this time, Investigator Bower of the canine unit responded to the scene.  Officer Timberlake and Investigator Bower then went to the house that Houston appeared from and received consent from an occupant to walk through the home.  During the walk-through, the officers encountered Horsley.  He gave them an identification card with the name Clyde Lark and told them he was with Houston.

{¶5}    After finding no one else in the home, Investigator Bower returned to the rental car and began to walk his dog around the car.  After the dog alerted on the driver side door, Houston consented to a search of the vehicle and the officers found over 1000 Oxycodone and 110 Oxymorphone pills.  They also found over $13,000 in cash.  As a result, the officers arrested both Houston and Horsley.

{¶6}    Prior to trial, Horsley moved to suppress the drugs found in the vehicle based on a violation of his state and federal constitutional rights.  After a hearing, the trial court overruled Horsley's motion.  Subsequently, Horsley pleaded no contest to one count each of trafficking in drugs, possession of drugs and tampering with evidence.  Horsley now appeals the trial court's denial of his motion.

## II. ASSIGNMENT OF ERROR

{¶7}    Horsley raises one assignment of error for our review:

1. THE TRIAL COURT ERRED IN DENYING MR. HORSLEY'S MOTION TO SUPPRESS, AS THE STATE VIOLATED HIS FEDERAL AND OHIO CONSTITUTIONAL RIGHTS BY DEMANDING IDENTIFICATION OF AN OCCUPANT OF AN ILLEGALLY-PARKED CAR AND WITHOUT REASONABLE SUSPICION TO EXTEND ITS INVESTIGATION BEYOND THE PURPOSE OF THE PARKING VIOLATION.

## III. LAW AND ANALYSIS

{¶8}    In his sole assignment of error, Horsley argues that the trial court erred by denying his motion to suppress evidence.  He claims that the police violated Houston's

constitutional rights by asking for his identification and detaining him longer than necessary to issue the parking citation. Thus, he claims that Houston was illegally seized in violation of the Fourth Amendment and State Constitution. Therefore, the evidence found in the vehicle should be suppressed.

**{¶9}** Horsley raised none of these issues in his motion to suppress. In fact, in his motion Horsley never even discussed Houston or the parking citation. Rather, he only generally asserted that the officers violated his Fourth Amendment rights by "seiz[ing] and search[ing] [his] vehicle and person without a search warrant and without his consent." Although it is axiomatic that a party's failure to raise an issue at the trial court level waives his right to raise that issue on appeal, Horsley did raise arguments similar to his assignment of error in his closing statement at the suppression hearing. *See Shover v. Cordis Corp.*, 61 Ohio St.3d 213, 220, 574 N.E .2d 457 (1991), *overruled on other grounds*. Therefore, we will consider the merits of his appeal. And because the Supreme Court of Ohio has interpreted Article I, Section 14 "to protect the same interests and in a manner consistent with the Fourth Amendment," we will focus our analysis on the United States Constitution. *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991), fn. 1.

### A. Standard of Review

**{¶10}** "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.

Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

## B. The Fourth Amendment

{¶11} Horsley contends that at the suppression hearing the parties agreed that he had standing to challenge the search of the vehicle and as a result the state is precluded from raising that issue on appeal. At the outset of the suppression hearing the state raised the issue of standing, claiming that Horsley did not have a possessory interest in the vehicle. After a brief discussion of the issue the record reflects that the state did concede both Horsley and Houston had standing to challenge the search and stated it was ready to proceed with the hearing. Because the state conceded the standing issue, we will briefly address the merits of his argument that Houston's Fourth Amendment rights were violated.

{¶12} The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated." Fourth Amendment rights are personal in nature and may not be vicariously asserted by others. *Rakas v. Illinois*, 439 U.S. 128, 133-134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Thus, "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself * * *." *Alderman v. United States*, 394 U.S. 165, 171-172, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a

third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas* at 134.

**{¶13}**  A search violates an individual's Fourth Amendment rights only when the individual has "a legitimate expectation of privacy" in the place searched or the item seized.  *See Rawlings v. Kentucky*, 448 U.S. 98, 106, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).  *See also State v. Morgan*, 4th Dist. No. 05CA14, 2006-Ohio-3659, ¶ 21.  The defendant bears the burden of demonstrating that he possessed a legitimate expectation of privacy in the object of the search. *State v. Dennis*, 79 Ohio St.3d 421, 426, 683 N.E.2d 1096 (1997), citing *Rawlings* at 104.  "In short, a defendant who fails to show that he has a legitimate expectation of privacy in the area invaded has suffered no Fourth Amendment violation." *State v. Sullins*, 4th Dist. No. 94CA2058, 1995 WL 542419, * 2 (Sept. 8, 1995).

**{¶14}**  The Supreme Court of the United States has recognized that both drivers and passengers may challenge the validity of a traffic stop.  *Brendlin v. California*, 551 U.S. 249, 255-256, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).  This is so because "during a traffic stop an officer seizes everyone in the vehicle, not just the driver." *Id.* at 255.  Under this premise, a passenger may challenge a search of his person and the vehicle based on an unconstitutional seizure under the Fourth Amendment.  *Id.* at 255-256.  However, a Fourth Amendment challenge to the search itself, rather than the stop of the vehicle, is a distinct issue.  *Id. See also State v. Redding*, 9th Dist. No. 10CA0018-M, 2010-Ohio-4286, ¶ 9.

**{¶15}**  Here, there was no traffic stop.  Rather, this case involves the issuance of a parking citation.  And unlike a traffic stop, a parking citation of an unoccupied vehicle

does not involve the seizure of a former passenger.  Thus, Horsley cannot challenge the validity of the search based on an unconstitutional seizure of his person.

{¶16}  Furthermore, Horsley does not allege that he had a possessory interest or any other connection to the rental car at issue.  In fact, he never even claims that he was inside the vehicle.  Rather, Horsley argues that the evidence should be excluded because the officers asked for Houston's identification and detained Houston for an unreasonable amount of time, i.e. longer than was necessary to issue the parking citation.  In other words, Horsley seeks to suppress the evidence in this case based on the violation of a third party's constitutional rights.  However, defendants may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have been violated. *United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).  And because Horsley has not alleged a possessory or property interest in the vehicle, he has not established that he had an expectation of privacy in the area searched.  *See Rakas*, 439 U.S. at 148-149, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).  Consequently, he cannot assert that his own Fourth Amendment rights were violated.

## C.  Inevitable Discovery

{¶17}  In this case even assuming, arguendo, that Houston was illegally detained, and this somehow violated Horsley's rights, Horsley's argument still fails under the inevitable discovery doctrine.  The inevitable discovery doctrine allows evidence that was obtained illegally to be admitted if it would have inevitably been obtained lawfully. *State v. Bradford*, 4th Dist. No. 09CA880, 2010-Ohio-1784, ¶ 54, citing *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).  This exception was adopted by the Supreme Court of Ohio in *State v. Perkins*, 18 Ohio St.3d

193, 480 N.E.2d 763 (1985). It is the state's "burden to show within a reasonable probability that police officials would have discovered the derivative evidence apart from the unlawful conduct." *Id.* at 196. The state can establish the inevitable discovery of an unconstitutionally seized item by showing "prior to the misconduct, authorities were actively pursuing an alternate line of investigation that would have led to discovery of the item * * *." *Bradford* at ¶ 55.

**{¶18}** Here, the state argues that even if Houston was illegally detained for a time longer than reasonable to issue the traffic citation, the officers would have still lawfully discovered the drugs in the rental vehicle via the dog sniff. We agree.

**{¶19}** Before having any interaction with Houston, Officer Hedrick encountered the white Chevrolet Malibu parked illegally on a public street. She ran the car's license plate and learned that the vehicle was rented in Cleveland. She then contacted Officer Timberlake because earlier that morning he had received information from a confidential informant that two black males from out of town were driving a late model white Chevrolet and selling drugs in Portsmouth. When Officer Timberlake arrived at the scene, both he and Officer Hedrick got out of their vehicles and stood on the sidewalk near the rental car. Furthermore, Investigator Bower of the narcotics unit testified that Officer Timberlake called him and told him that Officer Hedrick found a white rental car and asked him to respond to the scene. Investigator Bower told Officer Timberlake he would arrive shortly. Thereafter, Investigator Bower received a second phone call in which Officer Timberlake told him someone was coming out of the residence and to get there quick.

{¶20} Therefore, even if the officers had never encountered Houston, Detective Bower would have still responded to the scene with his dog. Furthermore, based on the information known to the officers about two black males from out of town driving a white Chevrolet and selling drugs in the area, it is reasonable to conclude that Investigator Bower would have still conducted a "dog sniff" of the vehicle and then found the drugs inside. Because an exterior canine sniff of an item in a public place is not a search within the meaning of the Fourth Amendment, see *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the officers could lawfully conduct the dog sniff of the rental vehicle in this case even without reasonable suspicion of drug activity. *See State v. Winters*, 4th Dist. No. 02CA42, 2004-Ohio-2591, ¶ 21. Therefore, it is clear that the officers were actively pursuing an alternate line of investigation that would have led to discovery of drugs. Accordingly, the state has shown within a reasonable probability that the officers would have discovered the drugs in this case apart from the unlawful conduct that Horsley contends took place. Even though the trial court failed to address the issue of inevitable discovery and based its ruling on reasonableness of Houston's detention, we review the correctness of judgments not the rationale behind them. *State v. Bondurant*, 4th Dist. Nos. 11CA25 & 11CA27, 2012-Ohio-4912, ¶ 59.

{¶21} In conclusion, because Horsley has not established an expectation of privacy in the area searched, his Fourth Amendment rights were not violated. And because the state has shown within a reasonable probability that the officers would have discovered the drugs in this case apart from the unlawful conduct that Horsley contends took place, the trial court did not err by denying the motion to suppress.

Accordingly, we find no merit in Horsley's assignment of error and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

Kline, J., dissenting.

{¶22}  I respectfully dissent because I find that the record is ambiguous, confusing, and not certain in itself regarding whether the defendant pled guilty or no contest.  As a result, I would remand for clarification of the record under App.R. 9(E).

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, P.J.:  Concurs in Judgment and Opinion.
Kline, J.:  Dissents with Opinion.

For the Court

BY: _____
William H. Harsha, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**