DECISION AND JUDGMENT ENTRY
{¶ 1} Donald Morgan ("Appellant") appeals the judgment of the Highland County Court of Common Pleas denying his motion to suppress. The Appellant argues the trial court erred when it concluded that the arresting officer justifiably detained the Appellant beyond the initial traffic stop. He also argues that the search of the automobile and an involved residence were not the result of voluntary consents given by him and the driver of the vehicle. Because we determine that the arresting officer was justified in detaining the Appellant beyond the initial stop, and because we find that the consents were voluntarily given, we affirm the judgment of the trial court.
 {¶ 2} On August 25, 2005 at 12:25 a.m., an on-duty Sergeant from the Highland County Sheriff's Department observed a motor vehicle and ran a registration check. The registration check of the license plate showed that the car was registered to a female whose driver's license was under suspension. The Sergeant observed two individuals in the vehicle, a female driver and a male passenger, the Appellant. The Sergeant conducted a traffic stop on the motor vehicle on State Route 247 in Washington Township of Highland County to identify the driver.
 {¶ 3} The Sergeant approached the vehicle and asked for identification from both the driver and the Appellant. The driver produced a driver's license. The Appellant, however, informed the Sergeant that he did not have any identification. When the Sergeant asked his name, the Appellant told him his name was Danny Morgan. When the Sergeant asked him for his social security number, the Appellant told the Sergeant he did not know. The Appellant also gave false information when the Sergeant asked about his date of birth and his age.
 {¶ 4} After this initial contact with the Appellant and the driver of the vehicle, the Sergeant returned to his police cruiser and verified that the driver of the vehicle had a valid driver's license. The Sergeant then inquired dispatch about "Danny Morgan" and dispatch advised him that "Danny Morgan" had no record on file and no active warrants. The Sergeant learned from dispatch that "Danny Morgan" had red hair, while the Appellant has brown hair. Dispatch also informed the Sergeant that one Donald Morgan had an active warrant.
 {¶ 5} The Sergeant then returned to the vehicle and asked the driver to step out of the vehicle. At that point, the Sergeant advised the driver that he felt the Appellant was not being honest about his identity and told her that if she knew the passenger's name, she needed to tell him. The driver then advised the Sergeant that she knew the passenger as "Duck Morgan." Following this exchange, the Appellant stuck his head out of the window and advised the Sergeant that he was Donald Morgan and he had lied about his identity. The Sergeant then advised the Appellant to exit the vehicle as he was under arrest on the outstanding warrant.
 {¶ 6} As the Appellant exited the vehicle, the Sergeant observed a black item sticking out from under the passenger seat where the Appellant was sitting. The Sergeant obtained the driver's permission to look under the passenger seat. He found three plastic baggies containing a white powder substance, a drug pipe, and a small baggie containing green vegetation under the passenger seat.
 {¶ 7} At 12:50 a.m., the Sergeant obtained verbal and written permission from the driver to search the entire vehicle. When the Sergeant secured the baggies he found under the passenger seat, the Appellant blurted out "it's mine, not [the driver]'s." The Sergeant then obtained both verbal and written permission from the driver to search her residence. The Sergeant also asked the Appellant for permission to search the same residence and he replied, "you will have to ask [driver]." Law enforcement officials searched the residence and found a methamphetamine laboratory in a shed on the property.
 {¶ 8} On October 5, 2004, the Appellant was indicted and charged with one count of illegal manufacture of drugs, in violation of R.C. 2925.04, one count of illegal assembly or possession of chemicals to manufacture drugs, in violation of R.C. 2925.041, one count of possessing criminal tools, in violation of R.C. 2923.24, and two counts of aggravated possession of methamphetamine, in violation of R.C. 2925.11. On January 27, 2005, the Appellant filed a motion to suppress. The trial court held an evidentiary hearing on the motion on March 15, 2005. On June 8, 2005, the trial court overruled the Appellant's motion to suppress.
 {¶ 9} On September 1, 2005, the Appellant pled no contest to a single count of illegal manufacture of drugs in violation of R.C. 2945.04. The trial court sentenced the Appellant to a two-year prison term. The Appellant now appeals, asserting the following assignments of error:
 {¶ 10} I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN CONCLUDING THAT STATE V. YEAGER (SEPT. 24, 1999), ROSS. APP. NO. 99CA2492, HOLDS THAT THE OFFICER HAD A RIGHT TO ASK THE PASSENGER FOR IDENTIFICATION AS A MATTER OF PROTECTING HIS OWN SAFETY.
 {¶ 11} II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN CONCLUDING THAT THE OFFICER WAS JUSTIFIED IN DETAINING THE DRIVER AND THE PASSENGER WELL BEYOND THE INITIAL TRAFFIC STOP.
 {¶ 12} III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN CONCLUDING THAT ALL SEARCHES OF THE AUTOMOBILE AND THE DEFENDANT'S HOME WERE THE RESULT OF VOLUNTARY CONSENTS GIVEN BY THE DEFENDANTS.
 {¶ 13} IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN APPLYING STATE V. SHINKLE, 04CR032, 04C030 (2004).
 {¶ 14} V. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN ADOPTING THE "STATEMENT OF FACTS" SET FORTH IN THE MEMORANDUM IN SUPPORT FILED MAY 2, 2005 BY MS. HARRELL AS THE FACTUAL FINDINGS OF THE COURT.
 {¶ 15} We address the Appellant's first and second assignments jointly. In his first assignment of error, the Appellant contends the trial court erred when it concluded that under State v. Yeager (1999), Ross App. No. 99CA2492, 1999 WL 769965, the Sergeant had a right to ask the Appellant for his identification in order to protect the Sergeant's safety. In his second assignment of error, the Appellant asserts the trial court erred when it concluded the Sergeant justifiably detained him and the driver well beyond the initial traffic stop.
 {¶ 16} Appellate review of a decision on a motion to suppress presents mixed questions of law and fact. State v. McNamara
(1997), 124 Ohio App.3d 706, 710, citing United States v.Martinez (C.A.11, 1992), 949 F.2d 1117, 1119. In a motion to suppress, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. See, e.g., State v. Mills (1992),62 Ohio St.3d 357, 366, 582 N.E.2d 972, citing State v. Fanning
(1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583; see, also, State v.Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594, 621 N.E.2d 726. Accepting those facts are true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Ornelas v. United States (1996), 517 U.S. 690,697, 116 S.Ct. 1657, 134 L.Ed.2d 911; State v. Klein (1991),73 Ohio App.3d 486, 488, 597 N.E.2d 1141; Williams, Guysinger,
supra.
 {¶ 17} A police officer may conduct a traffic stop on reasonable suspicion that a motorist is violating a municipal ordinance governing operation of a motor vehicle. See Westlakev. Kaplysh (1997), 118 Ohio App.3d 18, 20, 691 N.E.2d 1074;State v. Pringle (1998), 128 Ohio App.3d 740, 741,716 N.E.2d 771. The propriety of an investigative stop is viewed in light of the totality of the circumstances. State v. Bobo (1988),37 Ohio St. 3d 177, 524 N.E.2d 489, paragraph one of the syllabus. As long as a legitimate traffic stop is not extended beyond the time reasonably necessary to carry out its purpose, a request for identification from the passengers, followed by a computer check, does not constitute an unreasonable search and seizure. State v.Morgan, Montgomery App. No. 18985, 2002-Ohio-268. Officer safety is a very legitimate concern and an officer may therefore take those steps necessary to protect his or her safety. State v.Spikes, Lake App. No. 2005-L-039, 2006-Ohio-1452, at ¶ 19, citing State v. Stiles, Ashtabula App. No. 2002-A-0078, 2003-Ohio-5535; see also State v. Lozada, 92 Ohio St.3d 74, 79,2001-Ohio-149.
 {¶ 18} The Appellant argues that the trial court erred when it stated in its Decision and Entry that State v. Yeager,
supra, stood for the proposition that the Sergeant had a right to ask Appellant for identification. In paragraph two of its Decision and Entry, the trial court stated:
The Court has concluded that State v. Yeager (Sept. 24, 1999) Ross County Appellate No. 99 CA 2492 is controlling as to the initial stop of the motor vehicle and that the officer had a right to ask the passenger for identification as a matter of protecting his own safety.
 {¶ 19} A brief review of State v. Yeager, supra, establishes its applicability to this case in regard to the initial stop of the vehicle. State v. Yeager, however, does not reference an officer's right to ask a passenger for identification in order to protect his own safety. A plain reading of the trial court's Decision and Entry shows that the trial court made two separate conclusions in paragraph two. First, it concluded that State v. Yeager was controlling with regard to the initial stop of the motor vehicle. Second, it concluded that the officer had a right to ask the passenger for identification in order to protect his own safety. The second clause does not refer back to State v. Yeager. The use of the words "and that" prior to the second clause establishes its independence from the first portion of the sentence. The trial court, therefore, did not improperly conclude that State v.Yeager stands for the proposition that an officer may ask a passenger for identification in order to protect his or her own safety.
 {¶ 20} As discussed supra, as long as a legitimate traffic stop is not extended beyond the time reasonably necessary to carry out its purpose, a request for identification from the passengers, followed by a computer check, does not constitute an unreasonable search and seizure. State v. Morgan, supra. Applying this rule to the case sub judice, it is clear that it was reasonable for the Sergeant to request identification from the Appellant. The traffic stop the Sergeant executed was a legitimate, reasonable exercise. See State v. Yeager, supra ("[w]e find nothing unreasonable in an officer's decision to stop a vehicle whose owner does not have a valid driver's license when the officer can reasonably infer that the owner is the driver"). The Sergeant did not detain the Appellant and the driver for an unreasonable amount of time. Additionally, as referenced supra, the Appellant gave the Sergeant false and evasive information regarding his identity when the Sergeant asked for documentation. Thus, the Sergeant properly detained the Appellant and the driver further in order to investigate the Appellant's identity. The trial court's determination that the search was not unreasonable was supported by competent, credible evidence. The Appellant's first and second assignments of error are accordingly overruled.
 {¶ 21} In his third assignment of error, the Appellant contends the trial court erred when it concluded that all searches of the automobile and the residence were the result of voluntary consents. In order for a defendant to show a violation of his Fourth Amendment rights, he or she must show that the search infringed upon his or her legitimate expectation of privacy. Rakas v. Illinois (1978), 439 U.S. 128, 148,99 S.Ct. 421. In an automobile search, if either the stopping of the motor vehicle or the removal of the passenger was unreasonable under the Fourth Amendment, then the passenger has standing to object to the search. State v. Carter (1994), 69 Ohio St.3d 57, 63,630 N.E.2d 355. Law enforcement does not need a search warrant when an individual voluntarily consents to a search. State v.Childress (1983), 4 Ohio St.3d 217, 219, 448 N.E.2d 155.
 {¶ 22} In order for the Appellant to have standing to object to the search of the automobile, his removal from the car must have been unreasonable under the Fourth Amendment, as he has not objected to the initial stop. The Appellant alleged no property or possessory interest in the vehicle at the time of the stop. He was merely a passenger in the vehicle when the Sergeant executed the search. The search, therefore, did not infringe upon the Appellant's legitimate expectation of privacy. Additionally, the Appellant gave the Sergeant false and evasive information regarding his identity when the Sergeant asked for documentation. Because of these facts and the surrounding circumstances, the removal of the Appellant from the vehicle was not unreasonable under the Fourth Amendment. Therefore, the Appellant does not have standing to object to the search of the automobile.
 {¶ 23} The Appellant also asserts that the driver's consent to search the automobile was not voluntary. Voluntariness is a question of fact to be determined by the totality of the circumstances. Schneckloth v. Bustamonte (1973), 412 U.S. 218,227, 93 S.Ct. 2041. The state must show that the consent to search was freely and voluntarily given and was not the product of duress or coercion. Id. An officer does not necessarily have to inform a suspect of his or her right to refuse the request for consent to search. Id.
 {¶ 24} In the case sub judice, the Sergeant asked the driver for her permission to search the passenger area of the vehicle, as he observed a black item protruding from under the passenger seat when he removed the Appellant from the vehicle. The driver granted the Sergeant permission to look under the passenger seat. The search yielded three plastic baggies containing a white substance, a baggy of green vegetation, and a one-hitter drug pipe. The Sergeant then asked the driver if he could search the remainder of the vehicle, at which point she gave him verbal and written consent to do so. The search of the rest of the vehicle did not produce any evidence. The Appellant argues that the driver's consent was not voluntary because earlier in the stop the Sergeant had an exchange with the driver regarding the identity of her passenger in which he threatened her with an arrest. The Sergeant testified to the exchange at the motion to suppress hearing. The testimony is as follows:
Q. * * * [Y]ou knew that there was a Morgan with a warrant out so you were going to dig and dig to see if this was one of those Morgans?
A. Correct.
Q. Okay, now, at this point you went back to the vehicle and you asked [the driver] to step out of the car, is that true?
A. Correct.
Q. And did you at this time tell her that if she didn't tell you, that she needed to tell you and if you could prove it that she was going to be arrested?
A. I told her that if she lied to me and I could prove that she was lying to me about who her passenger was then, yes, I would have arrested her for that.
Q. So basically you were threatening her with an arrest?
A. No, I wasn't threatening her. I was telling her the way it was. (Emphasis added). The exchange indicates that the Sergeant told the driver she would be arrested if she lied about the Appellant's identity. The exchange covered only that matter; it did not concern the search of the vehicle or her residence in any way. This fact, taken with the manner in which the Sergeant asked and the driver gave her consent to search the vehicle later in the stop, shows that the driver freely and voluntarily gave her consent to search the automobile.
 {¶ 25} The Appellant also argues that the trial court erred when it determined the search of the residence was the result of voluntary consents given by both. In order for a party to have standing to contest the voluntariness of a consent to search, he or she must have a reasonable expectation of privacy in the area to be searched. See Rakas, supra. A person who is merely present in another's home does not have a legitimate expectation of privacy. Minnesota v. Carter (1998), 525 U.S. 83, 91,119 S.Ct. 469. A written consent is strong evidence of a defendant's willingness to allow a search. See Schneckloth, supra.
 {¶ 26} The residence the driver issued her consent to search was neither owned by her, nor by the Appellant. Testimony showed the residence was owned by an individual who was in prison at the time of the search. The driver lived at and was in control of the residence at the time of the search. The Appellant's testimony regarding his residence varied during different stages of the proceedings. At the time of the stop, the Appellant told the Sergeant that he had been living at the residence in question for two months. However, in a later affidavit, he testified that he resided elsewhere. During the suppression hearing, the Sergeant testified that when he asked the Appellant for permission to search the residence, he replied, "I have only lived there two months, you will have to ask [the driver]." There is, therefore, nothing to suggest that the Appellant was coerced into giving his consent to search the residence.
 {¶ 27} The Appellant also argues that the driver was coerced into giving her permission to search the residence because the Sergeant threatened her with arrest. As discussed supra, the exchange that took place between the driver and the Sergeant was limited to the topic of the Appellant's identity. It did not concern the search of the residence. Therefore, the totality of the circumstances shows that the Appellant's and driver's consents to search the vehicle and the residence were voluntary. The Appellant's third assignment of error has no merit.
 {¶ 28} In his fourth assignment of error, the Appellant asserts the trial court erred when it applied State v. Shinkle,
Highland Co. Case Nos. 04CR030 and 04CR032, to the case sub judice. Shinkle concerned a motion to suppress evidence obtained in the course of a traffic stop.
 {¶ 29} As stated supra, appellate review of a decision on a motion to suppress presents mixed questions of law and fact. SeeState v. McNamara, supra. In a motion to suppress, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. See, State v. Mills, supra; State v. Williams,
supra. We are therefore bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger, supra. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id. Therefore, the question of whether the trial court appropriately applied Shinkle, supra, is a non-issue here, as this court must determine whether the trial court's facts meet the appropriate legal standard. Additionally, we note that the trial court merely directed counsel for the Appellant and Appellee in its Decision and Entry to note theShinkle decision for further reference for some of the issues presented in this case. The Appellant's fourth assignment of error is therefore overruled.
 {¶ 30} In his fifth assignment of error, the Appellant contends the trial court erred when it adopted the Appellee's statement of facts set forth in its May 2, 2005, memorandum as its factual findings. In reviewing a motion to suppress, an appellate court is bound to accept a trial court's factual findings if they are supported by competent, credible evidence. See Guysinger, supra. The Appellant objects to the trial court's adoption of three particular elements in its Decision and Entry. First, the Appellant objects that the adopted statement of facts says that the Sergeant told the driver he "could" arrest her if she lied to him about the Appellant's identity, instead of saying that he "would" arrest her. Second, the Appellant argues the trial court omitted the Sergeant's testimony that he only had a "hunch" the Appellant was lying about his identity. Third, the Appellant argues that the trial court improperly excluded testimony in which the Sergeant admits to "digging."
 {¶ 31} The Appellant argues that the trial court's adoption of the word "could" instead of "would" in its statement of facts is relevant as to whether the Sergeant threatened the driver with arrest. As noted supra, however, a thorough review of the transcript shows that the Sergeant merely told the driver that if she lied to him about the Appellant's identity, she would be arrested specifically for that offense. He did not threaten her with an immediate arrest. He simply explained to her the consequences of one potential course of action. The trial court's use of the word "could" is therefore justified.
 {¶ 32} The Appellant also argues that in adopting the Appellee's statement of facts, the trial court omitted the Sergeant's testimony that he had a "hunch" the Appellant was lying about his identity and was "digging" around. On cross examination, the Sergeant testified that he "had a suspicion that [the Appellant] was lying to me about who he was." The suggestion that his suspicion was merely a hunch was only interjected by the Appellant's counsel when he asked "[d]id you really just have a hunch, you had a hunch?" The Sergeant replied, "[y]es, I would say I had a hunch when he hesitated" (Emphasis added). Although counsel led the Sergeant into repeating his suggestion, the other testimony the Sergeant offered throughout the proceeding supports the Sergeant's position that he had a reasonable suspicion the Appellant was lying to him about his identity.
 {¶ 33} Finally, the Appellant argues the trial court erroneously eliminated the Sergeant's statement that he was "digging." The testimony to which the Appellant alludes is as follows:
Q. You further detained them, correct, to dig deeper?
A. If that is what you want to call it, I guess.
 {¶ 34} A review of this testimony shows that counsel suggested to the Sergeant that he was digging. The Sergeant did not admit to such action. In fact, he notes that that is merely how counsel attempts to frame the action. The trial court's findings of fact regarding this issue, as well as those discussed supra, are supported by competent, credible evidence. The Appellant's fifth assignment of error is therefore overruled.
 {¶ 35} Because we find that none of Appellant's assignments of error are meritorious, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.