[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] The record contains inconsistent spellings of appellant's name: Tammie and Tammy. We use the spelling as it appears on the indictment: Tammie.
 DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Highland County Common Pleas Court judgment of conviction and sentence. Tammie K. Rose, defendant below and appellant herein, assigns the following errors for review and determination:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN ITS INTERPRETATION THAT STATE V. YEAGER [(Sept. 24, 1999), Ross App. No. 99CA2492], IS CONTROLLING AND GIVES THE OFFICER A RIGHT TO ASK [A] PASSENGER FOR IDENTIFICATION AS A MATTER OF PROTECTING THAT OFFICER'S SAFETY."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED IN ITS APPLICATION OF STATE V. YEAGER
WHEN THE OFFICER TESTIFIED THAT HE DID NOT HAVE ANY CONCERNS FOR HIS SAFETY."
THIRD ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED IN ITS HOLDING THAT YEAGER ALLOWED THE STOP TO BE EXTENDED BEYOND THE INITIAL REASON FOR THE STOP AND FAILED TO APPLY OTHER CASE LAW TO THE SET OF CIRCUMSTANCES."
FOURTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED IN ITS HOLDING THAT THE CONSENT FOR THE SEARCH OF THE DEFENDANT'S CAR AND HOME WAS VOLUNTARY."
FIFTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED IN BASING ITS OPINION ON A PRIOR CASE,STATE V. SHINKLE WHEN THE FACTS OF THE CASES WERE SIGNIFICANTLY DIFFERENT."
SIXTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANTS' [SIC] MOTION TO SUPPRESS BASED ON FACTS PROVIDED IN THE PROSECUTOR'S MEMORANDUM IN SUPPORT AND NOT ON FACTS PRESENTED IN COURT AT THE SUPPRESSION HEARING."
 {¶ 2} On October 5, 2004, the Highland County Grand Jury returned an indictment charging appellant with: (1) illegal manufacture of drugs in violation of R.C. 2925.04; (2) illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.04; (3) aggravated possession of methamphetamine in violation of R.C. 2925.11; and (4) possessing criminal tools in violation of R.C. 2923.24.
 {¶ 3} Appellant pled not guilty and later filed a motion to suppress the evidence obtained as a result of a traffic stop. She asserted that the stop and subsequent search violated theFourth Amendment because the officer lacked probable cause or reasonable suspicion to stop her vehicle or to continue to detain her and her passenger and because she did not consent to a search of her vehicle or her home. At the motion hearing, Highland County Sheriff's Deputy Chris Bowen testified that between midnight and 12:30 a.m. on August 24, he ran a license plate registration check on a vehicle. Dispatch advised him that Leola Turvene was the vehicle's registered owner and that her license had expired. Deputy Bowen then decided to stop Turvene vehicle.
 {¶ 4} As the officer approached the vehicle, he recognized the driver (appellant) but not the passenger. He requested appellant's driver's license and the passenger's identification. The passenger told the officer that he did not have identification, but that his name was Danny Morgan. The officer then asked the passenger for his social security. He, however, stated that he did not know his number. The officer then requested the passenger's date of birth. The passenger hesitated before he stated that it was February 5, 1960. The officer then asked the passenger his age. Again, the passenger hesitated. The officer then walked to the cruiser and relayed to the dispatcher the information from appellant's driver's license and the passenger's name.
 {¶ 5} Deputy Bowen learned that appellant's license was valid, but that no record existed on Danny Morgan. He asked the dispatcher if any warrants existed on any Morgan subject because he was familiar with an individual by the name of "Duck Morgan," whom he thought had an existing warrant. The dispatcher stated that a capias did exist for one Donald Morgan. The dispatcher advised that if the passenger truly was Danny Morgan, he should have red hair. The passenger had brown hair, however.
 {¶ 6} Deputy Bowen then returned to the vehicle and requested appellant to exit so that he could question her about the passenger. The officer informed appellant that he thought the passenger was lying about his identity. He and appellant walked to his vehicle and he told her that he needed to know the passenger's identity and that if she lied to him, she could be arrested. Appellant told Bowen that she only knew the passenger as "Duck." The passenger apparently overheard this conversation and yelled out the window that he was Donald Morgan. The officer then arrested Morgan. When Morgan exited the vehicle, Bowen noticed something black protruding from underneath the passenger seat. After the officer secured Morgan, he told appellant that he saw something under the seat and requested appellant's permission. Appellant gave the officer permission.
 {¶ 7} When Deputy Bowen looked under the passenger seat, he observed a quart oil jug, three plastic baggies containing a white substance, a fourth baggie that contained green vegetation, and a "one hitter" drug pipe. Deputy Bowen took the items to his vehicle. Morgan stated that they were his. The officer then obtained appellant's permission to search the remainder of the vehicle and her residence at 7509 Walker Road. A search of the residence resulted in the discovery of a shed that contained a methamphetamine laboratory.
 {¶ 8} On June 8, 2005, the trial court overruled appellant's motion to suppress and adopted the state's version of the facts. The court determined that State v. Yeager (Sept. 24, 1999), Ross App. No. 99CA2492 permitted the officer to stop the vehicle. The court further concluded that the officer could ask the passenger for identification and, once the officer became suspicious that the passenger was not truthful, the officer could inquire further to ascertain the passenger's identity. The court also determined that appellant voluntarily consented to a search of her vehicle and home. To support its decision, the court referred the parties to its prior decision in State v. Shinkle,
Highland C.P. Nos. 04CR30 and 04CR32.
 {¶ 9} On February 2, 2006, appellant pled no contest to illegal manufacture of drugs and appellee agreed to dismiss the remaining charges. This appeal followed.
 I {¶ 10} Appellant's first three assignments of error relate to the propriety of the trial court's decision to overrule her motion to suppress evidence and to determine that the traffic stop did not violate the Fourth Amendment. Therefore, we address them together.
 {¶ 11} In her assignments of error, appellant contends that the trial court improperly applied Yeager when it determined that the traffic stop did not violate the Fourth Amendment. She asserts that both the initial stop and the continued detention were unlawful. Appellant contends argues that once the officer discovered that she was not Leola Turvene, the vehicle's registered, unlicensed owner, "the traffic stop was over." She further contends that because the officer knew before he asked for her license that she was not Turvene, he had no reason to suspect that appellant was driving without a valid license and had no right to further detain her and to request the passenger's identification.
 {¶ 12} Initially, we note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. See State v. Long (1998),127 Ohio App.3d 328, 332, 713 N.E.2d 1. When ruling on a motion to suppress evidence, a trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v. Treesh
(2001), 90 Ohio St.3d 460, 472, 739 N.E.2d 749; State v. Dunlap
(1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988; State v.Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, reviewing courts must defer to the trial court findings of fact if competent, credible evidence exists to support the findings. See Dunlap, supra; Long, supra; Statev. Medcalf (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. A reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long;State v. Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141;State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11. See, generally, United States v. Arvizu (2002), 534 U.S. 266,122 S.Ct. 744, 151 L.Ed.2d 740; Ornelas v. United States
(1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911.
 {¶ 13} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. See, e.g., Arvizu, 122 S.Ct. at 750; Terry v.Ohio (1968), 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889. "Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." Katz v.United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Once a defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible. See Maumee v. Weisner (1999),87 Ohio St.3d 295, 297, 720 N.E.2d 507; Xenia v. Wallace (1988),37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.
 {¶ 14} A traffic stop initiated by a law enforcement officer is a warrantless Fourth Amendment seizure. See Whren v.United States (1996), 517 U.S. 806, 809, 116 S.Ct. 1769,135 L.Ed.2d 89. Thus, a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. In Whren, the United States Supreme Court recognized that the Fourth Amendment's reasonable requirement is fulfilled and a law enforcement officer may constitutionally stop the driver of a vehicle when the officer possesses probable cause to believe that the driver of the vehicle has committed a traffic violation. The court stated:
"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of `persons' within the meaning of [the Fourth Amendment]. * * * An automobile stop is thus subject to the constitutional imperative that it not be `unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. * * *."
Id. at 809-10 (citations omitted); see, also, Dayton v.Erickson (1996), 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091.
 {¶ 15} A court that is determining whether a law enforcement officer possessed reasonable suspicion or probable cause to stop or to continue to detain an individual must examine the "totality of the circumstances." See, e.g., Arvizu, 534 U.S. at 273. The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" Id. (quoting United States v. Cortez (1981), 449 U.S. 411, 418,101 S.Ct. 690, 66 L.Ed.2d 621).
 {¶ 16} Once an officer has lawfully stopped a vehicle, the officer must "carefully tailor" the scope of the stop "to its underlying justification," and the stop must "last no longer than is necessary to effectuate the purpose of the stop." Florida v.Royer (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229; see, also, State v. Gonyou (1995), 108 Ohio App.3d 369, 372,670 N.E.2d 1040; State v. Birchfield (Aug. 26, 1997), Ross App. No. 97CA2281. The rule set forth in Royer is designed to prevent law enforcement officers from conducting "fishing expeditions" for evidence of a crime. Gonyou, supra; SagamoreHills v. Eller (Nov. 5, 1997), Summit App. No. 18495; see, alsoFairborn v. Orrick (1988), 49 Ohio App.3d 94, 95,550 N.E.2d 488, 490 (stating that "the mere fact that a police officer has an articulable and reasonable suspicion sufficient to stop a motor vehicle does not give that police officer `open season' to investigate matters not reasonably within the scope of his suspicion"). Thus, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes (2005),543 U.S. 405, 125 S.Ct. 834, 837, 160 L.Ed.2d 842 (citation omitted).
 {¶ 17} When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. SeeState v. Carlson (1995), 102 Ohio App.3d 585, 598,657 N.E.2d 591. An officer may expand the scope of the stop and may continue to detain the vehicle without running afoul of theFourth Amendment if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot. See, e.g., Terry, supra; State v. Robinette (1997),80 Ohio St.3d 234, 240, 685 N.E.2d 762; State v. Retherford
(1993), 93 Ohio App.3d 586, 601, 639 N.E.2d 498. In Robinette
the court stated at paragraph one of the syllabus:
"When a police officer's objective justification to continue detention of a person * * * is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure."
Thus, if a law enforcement officer, during a valid investigative stop, ascertains "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." Id. at 241; see, also, State v. Spindler
(Apr. 23, 2002), Ross App. No. 01CA2624.
 {¶ 18} Additionally, when a lawfully stopped vehicle contains passengers, law enforcement officers may detain those passengers for the duration of the driver's detention. See State v.Jackson (Apr. 25, 2006), Pickaway App. No. 05CA12,[2]
citing State v. Brown, Montgomery App. No. 20336,2004-Ohio-4058, at ¶ 14. Additionally, officers may request identification from the passengers. Id. Requesting identification from a passenger is "routine questioning" that is "but a minimal intrusion." State v. Chagaris (1995), 107 Ohio App.3d 551, 556,669 N.E.2d 92.
"Recognizing that `detention, not questioning, is the evil' at issue, * * * so long as the traffic stop is valid, `any questioning which occurs during the detention, even if unrelated to the scope of the detention, is valid so long as the questioning does not improperly extend the duration of the detention.'"
Id. at 556-57, quoting State v. Wright (June 28, 1995), Medina App. No. 2371-M; see, also, State v. Morgan, Montgomery App. No. 18955, 2002-Ohio-268.
 {¶ 19} Employing the above principles to the case at bar, we conclude that the trial court correctly overruled appellant's motion. The officer acquired information that the vehicle owner's driver's license had expired. Thus, he had reason to believe that a traffic violation was occurring and the resulting stop was proper. See R.C. 4507.02(A)(1) (prohibiting driving without a valid driver's license); Yeager (holding that a police officer may stop a vehicle when he reasonably suspects that a motorist is unlicensed). Under Whren, therefore, the officer's initial stop of the vehicle complied with the Fourth Amendment's reasonableness requirement.
 {¶ 20} The next issue is whether the officer could continue the detention once he realized that appellant was not the vehicle's owner. We believe that he could. The reason for the stop was to investigate whether a violation of R.C. 4507.02(A)(1) occurred. Although he recognized appellant and realized that she was not the vehicle's registered owner, the officer's suspicion that a R.C. 4507.02(A)(1) violation occurred was not necessarily dispelled. The officer did not know appellant's driver's license status and his request for her license was but a minimal intrusion. Thus, we disagree with appellant that the stop was "over" once the officer observed that appellant was not the vehicle's registered owner.
 {¶ 21} Appellant next asserts that even if the initial stop and continued detention to request her license was proper, the continued detention in order to request the passenger's license was not proper. As we stated above, however, law enforcement officers may request a passenger's identification as long as the driver's detention is lawful. See Jackson. In the case at bar, when the officer requested the passenger's identification, he had yet to complete the purpose of his stop, i.e., to investigate whether appellant violated R.C. 4507.02(A)(1). Here, Deputy Bowen requested the passenger's identification almost simultaneously with appellant's. Therefore, his request concerning the passenger's identification did not unlawfully prolong the stop. See Jackson.
 {¶ 22} Appellant next asserts that the officer unlawfully expanded the stop by questioning her about the passenger's identity. We disagree. The passenger's hesitation in responding to the officer's questions regarding his identity, and the officer's knowledge that an individual with the last name of Morgan had an outstanding warrant, gave the officer reasonable cause to investigate whether the passenger was the Morgan with the outstanding warrant. He thus was entitled to inquire further and to detain the vehicle until he dispelled or confirmed his suspicions.
 {¶ 23} Although we have independently reviewed the trial court's decision and determined that the court properly applied the Fourth Amendment principles, we address appellant's concern that the court misapplied Yeager. In Yeager, we concluded that "an officer's investigative stop of an automobile is justified solely on the basis of information that the vehicle's owner does not possess a valid driver's license." In Yeager,
the officer radioed dispatch for information about a vehicle's registered owner. The dispatcher advised that the car was registered to Evelyn Bosstic, who did not have a valid driver's license. The officer then stopped the vehicle. When the officer approached the vehicle, he observed a male driver. He also observed a bottle of mouthwash between the driver and passenger seat and detected a strong odor of alcohol. The officer later arrested the driver for operating a motor vehicle while under the influence of alcohol.
 {¶ 24} The defendant filed a motion to suppress evidence and argued that the officer lacked reasonable suspicion to stop the vehicle. The trial court granted the motion to suppress and the state appealed. On appeal, we held "that reliable information that a vehicle's owner lacks a valid operator's license, coupled with the rational inference that the owner is likely to be the driver, may create reasonable suspicion of criminal activity to support a traffic stop." We further stated that "a vehicle owner's license status is a specific articulable fact that an officer may rely upon in suspecting that a driver is illegally operating a vehicle." We found "nothing unreasonable in an officer's decision to stop a vehicle whose owner does not have a valid driver's license when the officer can reasonably infer that the owner is the driver." We thus concluded that the officer properly stopped the vehicle and did not violate the defendant'sFourth Amendment rights.
 {¶ 25} Yeager is similar to the case at bar and we see nothing improper with the trial court's reliance upon it. InYeager, as in the case sub judice, the officer stopped the vehicle upon suspicion that the vehicle owner did not have a valid driver's license. In Yeager, we held that a law enforcement officer may constitutionally stop a vehicle when he reasonably suspects that the vehicle owner lacks a valid license, and we see no reason to depart from that holding in the case at bar or why that holding should not apply to the case at bar.
 {¶ 26} Contrary to appellant's argument, we do not believe that the trial court relied upon Yeager to hold that the officer in the case sub judice could lawfully request the passenger's identification. The court's statement that, "the Court has concluded that [Yeager] is controlling as to the initial stop of the motor vehicle and that the officer had a right to ask the passenger for identification as a matter of protecting his own safety," contains two separate conclusions based on different legal principles, not one based on Yeager.
Furthermore, even if we assume for purposes of argument that the trial court misapplied Yeager, our de novo review of the trial court's application of the legal principles in a motion to suppress corrects any error. Therefore, appellant's arguments that the court incorrectly applied Yeager are without merit.
 {¶ 27} Appellant further asserts that our cautionary statement in Yeager should lead us to conclude that the officer could not prolong the stop once he realized that she was not the registered owner of the vehicle. In Yeager, we stated:
"Our holding should not be construed to mean that information concerning the invalidity of a vehicle owner's license will always justify an investigatory traffic stop. Because courts must utilize a totality of the circumstances standard to determine whether an investigatory stop is constitutionally valid, other information known to the officer could become relevant. For example, if other information discerned by the officer shows that the driver is not the registered owner, the officer may lack reasonable suspicion to stop the vehicle. In that situation, the inference that the owner is usually the driver is no longer rational and cannot be drawn from the fact of an unlicensed owner."
The above statement recognizes that the officer may, in certain instances, observe facts that should lead him to conclude that the vehicle driver is not the vehicle owner and that the officer may not be justified in stopping the vehicle.
 {¶ 28} In the case at bar, nothing in the record suggests that the officer recognized appellant before he stopped the vehicle. Only after he stopped the vehicle did he recognize appellant. In Yeager, we did not address the continued detention of a driver after the stop. Thus, the above cautionary statement regarding the initial stop of the vehicle does not apply.
 {¶ 29} We additionally note that in Yeager, the officer stopped the vehicle based upon information that the vehicle owner was presumably female and, upon approaching the vehicle, observed that the driver was male. We nonetheless upheld the validity of the stop. See, also, State v. Riley, Warren App. No. CA2002-12-120, 2004-Ohio-4412 (holding that the officer's suspicion that presumably female vehicle owner lacked valid license was not dispelled even though he observed a male behind the wheel). But, see, State v. Lavalette, Wood App. No. WD-02-025, 2003-Ohio-1997 (recognizing that beyond courtesy explanation for stop, the officer could not request driver's license and detain the driver of a vehicle he stopped based upon incorrect plate numbers when the officer realized that he had radioed in the wrong numbers, but ultimately upholding validity of traffic stop because the vehicle had a rusted license plate);State v. Kingman, Ashland App. No. 02COA032, 2003-Ohio-1243 (recognizing that beyond courtesy explanation for stop, officer could not lawfully continue detention of vehicle he stopped upon suspicion that the female registered owner was unlicensed when he observed that driver was male, but upholding validity of stop when driver volunteered that he also was unlicensed). We recognize, however, that in Yeager the issue concerning the continued detention of the male driver, once the officer stopped the vehicle, apparently was not raised. Instead, Yeager was limited to the initial stop of the vehicle.
 {¶ 30} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first, second, and third assignments of error.
 IV {¶ 31} In her fourth assignment of error, appellant asserts that the trial court erred by determining that she voluntarily consented to a search of her car and home. She argues that the officer exceeded the scope of her consent, threatened her with arrest, and "presented with an overwhelming show of force."
 {¶ 32} No Fourth Amendment violation occurs when an individual voluntarily consents to a search. See United Statesv. Drayton (2002), 536 U.S. 194, 207, 122 S.Ct. 2105,153 L.Ed.2d 242 (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); Schnecklothv. Bustamonte (1973), 412 U.S. 218, 219, 93 S.Ct. 2041,36 L.Ed.2d 854 ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); State v. Comen (1990),50 Ohio St.3d 206, 211, 553 N.E.2d 640. Consent to a search is "a decision by a citizen not to assert Fourth Amendment rights." Katz, Ohio Arrest, Search and Seizure (2004 Ed.), Section 17:1, at 341. In Schneckloth, the United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal. Id. at 227-228.
 {¶ 33} Whether an individual voluntarily consented to a search is a question of fact, not a question of law. See Statev. Fry, Jackson App. No. 03CA26, 2004-Ohio-5747, at ¶ 21, citingOhio v. Robinette (1996), 519 U.S. 33, 40, 117 S.Ct. 417,136 L.Ed.2d 347; Schneckloth, 412 U.S. at 227; Robinette,80 Ohio St.3d at 248-249, 685 N.E.2d 762; State v. Southern (Dec. 28, 2000), Ross App. No. 00CA2541.[3] Because a reviewing court should defer to a trial court when it acts as the trier of fact, an appellate court must give proper deference to a trial court's finding regarding whether a defendant voluntarily consented to a search. Fry, at ¶ 21. Thus, appellate courts review trial court findings that a defendant voluntarily consented to a search under the weight of the evidence standard set forth in State v.Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. See Fry.
Even though the state's burden of proof is "clear and convincing," this standard of review is highly deferential and the presence of "some competent, credible evidence" to support the trial court's finding requires us to affirm it. Schiebel.
Moreover, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. Statev. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. This principle applies to suppression hearings as well as to trials. See Fry, at ¶ 22, citing Statev. Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583.
 {¶ 34} Important factors for a court to consider in determining whether consent is voluntary include: (1) the suspect's custodial status and the length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse to consent and his status as a "newcomer to the law"; and (7) the suspect's education and intelligence. See Schneckloth,412 U.S. at 248-249; see, also, State v. Lattimore, Franklin App. No. 03AP-467, 2003-Ohio-6829, at ¶ 14; State v. Dettling
(1998), 130 Ohio App.3d 812, 815-816, 721 N.E.2d 449.
 {¶ 35} An individual's knowledge of the right to refuse consent "is not a prerequisite of a voluntary consent."Schneckloth, 412 U.S. at 234. Rather, it must be determined if a person felt compelled to submit to the officer's questioning in light of the police officer's superior position of authority.Robinette, 80 Ohio St.3d at 244-245. "The Court has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search." Drayton,536 U.S. at 206 (citing Ohio v. Robinette (1996), 519 U.S. 33, 39-40,117 S.Ct. 417, 136 L.Ed.2d 347; Schneckloth, 412 U.S. at 227). While knowledge of the right to refuse consent is one factor, the state need not establish such knowledge as the sine qua non of an effective consent. Drayton, 536 U.S. at 206-207. "Nor do this Court's decisions suggest that even though there are no per se rules, a presumption of invalidity attaches if a citizen consented without explicit notification that he or she was free to refuse to cooperate. Instead, the Court has repeated that the totality of the circumstances must control, without giving extra weight to the absence of this type of warning. See, e.g.,Schneckloth, supra; Robinette, supra." Drayton,536 U.S. at 207.
 {¶ 36} In the case sub judice, we believe that the evidence supports the trial court's determination that appellant voluntarily consented to the search of her vehicle and home. Application of the Schneckloth factors reveals: (1) appellant was not under arrest when she consented to the search of her vehicle or home, but was lawfully stopped for a suspected traffic violation; (2) the record suggests that when appellant consented, not more than twenty to thirty minutes had elapsed; (3) appellant consented to the search her vehicle on the side of the roadway, not at a police station where the environment can be more intimidating; (4) no evidence was adduced that the officer threatened appellant into coercing, promised her anything in exchange for consenting, or otherwise used coercive police tactics to obtain her consent (the presence of an additional police officer did not render the environment unduly coercive, and simply because the officers were armed did not render the environment unduly coercive); (5) appellant's words and conduct led the officer to believe that she consented and nothing in the record suggests that she hesitated before consenting; and (6) nothing in the record suggests that appellant failed to cooperate with the officers. We agree with the trial court's conclusion that the totality of the circumstances indicates that appellant consented to a search of her vehicle and home. The officer testified that appellant consented to a search of both the vehicle and her home, both verbally and in writing.[4]
 {¶ 37} Appellant's assertion that the officer exceeded the scope of her consent by looking underneath the seat is without merit. When the officer looked under the seat, he observed not only the black object that initially aroused his curiosity and prompted him to request consent to search, but also what appeared to be contraband. He then requested appellant's permission to search the remainder of the vehicle, which she gave.
 {¶ 38} Appellant's complaint that the officer threatened her into consenting is also without merit. The officer apparently advised appellant that if she did not tell the truth regarding her passenger's identity, he would arrest her. The officer did not threaten to arrest her if she failed to give him information or if she failed to consent to a search.
 {¶ 39} We further disagree with appellant that appellant felt compelled to consent merely because the officer requested it. "`While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.'" Drayton, 536 U.S. at 205 (quoting INS v. Delgado
(1984), 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247).
 {¶ 40} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's fourth assignment of error.
 V {¶ 41} In her fifth assignment of error, appellant contends that the trial court erred by relying upon its prior decision inState v. Shinkle, Highland C.P. Nos. 04CR30 and 04CR32. Appellant asserts that the facts in Shinkle differ from the facts in the case at bar and, thus, that the court should not have relied upon it.
 {¶ 42} As we stated in our discussion of appellant's first three assignments of error, our de novo review of the trial court's legal conclusions in a motion to suppress corrects any error the trial court may have committed in relying upon incorrect case law. Thus, as we determined in a companion case, "the question of whether the trial court appropriately appliedShinkle, is a non-issue here, as this court must determine whether the trial court's facts meet the appropriate legal standard." State v. Morgan, Highland App. No. 05CA14,2006-Ohio-3659, at ¶ 29.
 {¶ 43} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's fifth assignment of error.
 VI {¶ 44} In her sixth assignment of error, appellant asserts that the trial court erred by adopting appellee's statement of facts.
 {¶ 45} A trial court may adopt a party's findings of fact so long as they are accurate. See State v. Combs (1994),100 Ohio App.3d 90, 652 N.E.2d 205, citing Adkins v. Adkins (1988),43 Ohio App.3d 95, 539 N.E.2d 686. In Adkins, the court stated that a court may adopt a party's "`proposed findings * * * verbatim,'" but that "`[b]efore adopting proposed findings * * * the trial judge has a duty to read the document thoroughly, and ensure that it is completely accurate in fact * * *.'" Id. at 98, quoting Paxton v. McGranahan (Oct. 31, 1985), Cuyahoga App. No. 49645.
 {¶ 46} In the case at bar, nothing suggests that appellee's statement of facts was inaccurate such that the trial court should not have adopted it.
 {¶ 47} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's sixth assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
[2] Jackson is not currently available on the Ohio Supreme Court's web site and thus, it does not have a "webcite."
[3] In Southern, we questioned whether the voluntariness of an individual's consent to search should be a question of fact, but ultimately decided that we must follow the Ohio Supreme Court's pronouncement on the issue. We stated: "We are tempted to question whether voluntariness in reality presents a factual issue requiring deferential review. See, e.g., Arizona v.Fulminate (1991), 499 U.S. 279, 287, 111 S.Ct. 1246,113 L.Ed.2d 302 (the ultimate issue of voluntariness in a confession context is a legal question) and O'Day v. Webb (1972),29 Ohio St.2d 215, 219, 280 N.E.2d 896 (simply because a question of law involves consideration of the facts does not turn it into a question of fact). See, also, Ruta v. Breckenbridge-Remy Co.
(1982), 69 Ohio St.2d 66, 68, 430 N.E.2d 935. Nonetheless, we are duty bound to follow Ohio v. Robinette, supra, and State v.Robinette, * * *."
[4] The record does not, however, contain appellant's written consent.